## CINCINNATI STREET RY CO v BLACKBURN et

Ohio Appeals, 1st Dist, Hamilton Co

Decided Dec 19, 1932

Leo J. Brumleve, Jr., Cincinnati, for plaintiff in error.

Kunkel & Kunkel, Cincinnati, for defendant in error Harriett W. Blackburn.

August A. Rendigs, Jr., Cincinnati, for defendant in error Taxicabs of Cincinnati, Inc.

## OPINION

By ROSS, PJ.

This case is presented on error from the Court of Common Pleas of Hamilton County, wherein judgment was rendered in favor of the plaintiff against the Cincinnati Street Railway Company, its co-defendant having been dismissed, all in accordance with a general verdict.

One assignment of error only is presented, predicated upon the refusal of the court to present to the jury a special verdict.

An examination of the record shows conclusively that the verdict was just and that substantial justice was given all the parties to the cause.

The question presented is whether in view of the provisions of §11364, GC, such error has intervened as to be a violation of an absolute right, constituting reversible error.

The pertinent sections of the Code applicable to the presentment of special verdicts to a jury are as follows:

Sec 11420-14 GC. "A special verdict is one by which the jury finds facts only as established by the evidence; and it must so present such facts, but not the evidence to prove them, that nothing remains for the court but to draw from the facts found, conclusions of law."

Sec 11420-16 GC. "When requested by either party, the court shall direct the jury to give a special verdict in writing, upon any or all issues which the case presents."

We have no alternative, but must hold that the court must, if requested so to do, present to the jury a special verdict.

Does the record show such a request? Does it show an appropriate exception? Here is what occurred:

"Mr. Brumleve: Counsel for The Cincinnati Street Railway Company asked the court to submit to the jury a special verdict. In other words, counsel asked for the jury to return a special verdict.

"The Court: I will refuse to give 12, 13, and 14.

"Mr. Rendigs: Counsel for Taxicabs of Cincinnati, objects to giving the verdict at all and requests. the court if the verdict is given to direct the jury that that verdict is being asked for by counsel for the Street Railway Company and not the Taxicab Company.

"Mr. Brumleve: I object to that.

"The Court: I will not give 12, 13, and 14.

"Mr. Brumleve: I submit the whole thing and you can refuse the whole thing. I want a request for a special verdict as the verdict is prepared by me.

"The Court: I will refuse to give 12, 13, and 14, and state if counsel will separate them and withdraw 12, 13, and 14, I will give it.

"Mr. Brumleve: Exception to the court not giving the special verdict to the jury as requested.

"Mr. Brumleve: Counsel thereupon offered a form which form was refused by the court to which counsel for the Cincinnati Street Railway Company excepted."

The form offered reads as follows:
"Court of Common Pleas,
"Hamilton County, Ohio.
"Harriett W. Blackburn, 767 Ridgeway Avenue, Cincinnati, Ohio, plaintiff v The Cincinnati Street Railway Company, a corporation organized under the laws of Ohio, Dixie Terminal Building, and Taxicabs of Cincinnati, Inc., a corporation under the laws of Ohio, Sycamore Street, Cincinnati, Ohio, defendants. No. A-21030. Special Verdict.

"The jury in this case, being duly impaneled and sworn, upon the concurrence of the undersigned jurors, being not less than three-fourths of the whole number thereof, do find and return this special verdict:

"(1) Did the driver of the taxicab, before making a turn, make sure that such movement could be made in safety?

"(2) Did the driver of the taxicab, before stopping, make sure that such movement could be made in safety?

"(3) Did the driver of the taxicab, before turning to the left, indicate that a left turn would be made by extending either hand beyond the line of the taxicab horizontally during one hundred feet in advance of such turn?

"(4) Did the driver of the taxicab, before stopping, indicate that a stop would be made by extending either hand beyond the line of his taxicab vertically downward, during one hundred feet in advance of such stop?

"(5) Did the driver of the taxicab keep a proper lookout for the approach of street cars when he stopped upon the tracks?

"(6) Did the driver of the taxicab at any time hear the street car approaching before the collision?

"(7) Did the driver of the taxicab at any time see the street car approaching before the collision?

"(8) Did the street car make a noise in its operation, before the collision, sufficient to be heard by an ordinarily prudent person situated in a position similar to that of the taxicab driver?

"(9) Was the street car, before the collision, visible to an ordinarily prudent person situated in a position similar to that of the taxicab driver?

"(10) How fast was the street car proceeding on Madison Road just previous to the collision?

"(11) Did the motorman of the street car keep a lookout straight ahead down the track for a distance of two squares before the collision?

"(12) What injuries did the plaintiff sustain as a result of the collision?

"(13) Is the coronary thrombosis, or heart condition, from which the plaintiff is suffering today, the result of the collision or the result of a disease that is not connected with the collision?

"(14) What, in your judgment, is the amount in money which will compensate the plaintiff for the damages which she has sustained as a result of this collision?

"(Thereupon, after argument of counsel for plaintiff, and counsel for defendants, The Cincinnati Street Railway Company and Taxicabs of Cincinnati, the court charged the jury)."

Again, after the giving of the general charge, the record states:
"Mr. Brumleve: General exception, and I want to repeat my request for the special verdict.

"The Court: Overruled.

"Mr. Brumleve: Exception."

It will be noticed that while the record appears to indicate that "a" special verdict was requested, such request in the first place manifestly refers to "the" form submitted, and even if this obvious fact be ignored there is no exception to the refusal to give "a" special verdict, but only to the refusal to the presenting of "the" special verdict submitted.

If such construction of the text of the record be considered close reading thereof, it is no more technical than that the provisions of §§11420-14 and 11420-16, GC, should be given effect and those of §11364, GC, be completely ignored. In State v Moon, 124 Oh St, 465, 179 NE, 350, the first paragraph of the syllabus reads: "The provisions of §13442-9 GC, requiring the court to state to the jury that it must not consider the punishment, but that punishment rests with the judge, are no more mandatory than are the provisions of §13449-5, GC, requiring that a judgment of conviction shall not be reversed unless it shall affirmatively appear from the record that the accused was prejudiced thereby or was prevented from having a fair trial." Here the Supreme Court held the two sections of equal dignity. Both are equally mandatory.

In **Washington Fidelity National Insurance Co. v Herbert, 125 Oh St, 591, 183 NE** 537, decided by the Supreme Court December 7, 1932, the court holds the provisions of §11447, GC, requiring the giving of special instructions before argument, to be mandatory, and that the refusal to give proper instructions constitutes reversible error, when the same charge is given in the general charge.

In both of these cases this court was reversed, in the Moon case when the Supreme Court applied and held mandatory the provisions of §13442-9, GC, requiring the court to state to the jury that it must not consider the punishment, and held failure to so charge to be reversible error, and in the Herbert case when it followed what it considered to be the holding of the Supreme Court in **Bartson v Craig, 121 Oh St,** 371, 169 NE, 291, and **Fair Store Co. v Christman, Admr., (Harris v Christman, Admr.),** 124 Oh St, 672, 181 NE, 887.

The Supreme Court in the opinion in the case of Washington Fidelity National Ins. Co. v Herbert, however, does not mention §11364, GC, and this section was not involved except possibly inferentially in this case or in the case of Bartson v Craig and Fair Store Co. v Christman (Harris v Christman), the real question being whether the error in a defective special charge, or the error in failing to give a proper special charge, was cured by a correct general charge covering the same matter.

Whether or not the mandatory provisions of §11364, GC, should be ignored in favor of the mandatory provisions of §§11420-14 and 11420-16, GC, certainly the mandatory character of the latter should

not have been given greater weight than the former, when the record fails to show a clear, definite invocation of the provisions of the section involved, with a specific exception applying to the error committed.

A reading of the special verdict submitted by plaintiff in error clearly shows that it does not* comply with the provisions of the sections of the Code applicable to special verdicts. Therefore, finding that substantial justice has been accorded all the parties in this case, and that the provisions of no special statute conferring any right have been violated, with an appropriate exception, we affirm the judgment of the Court of Common Pleas of Hamilton County.

Judgment affirmed.

HAMILTON and CUSHING, JJ, concur.

*The headnote in this case—lines 5 and 6—should read "did not comply" instead of "did comply." (See page 167).